UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Securities and Exchange
Commission,
    Plaintiff

    v.                         Civil No. 07-cv-39-SM
                                   Opinion No. 2008 DNH 053
Piyush G. Patel; David J.
Kirkpatrick; Eric Jaeger;
Bruce D. Kay; Robert J. Gagalis;
Robert G. Barber, Jr.; Lawrence
Collins; Michael A. Skubisz;
Jerry A. Shanahan; and Hor Chong
(David) Boey,
    Defendants

**O R D E R**

    The Securities and Exchange Commission ("SEC") has sued in eight counts,[1] seeking injunctive relief under 15 U.S.C. § 77t(b) and 15 U.S.C. §§ 78u(d) & (e) for various alleged violations of the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and certain rules promulgated thereunder.  Before the court is Lawrence Collins' motion to dismiss with prejudice.  The SEC objects.  For the reasons given, Collins' motion is granted in part.

---

    [1] Counts V through VII have been brought against all defendants while Count VIII has been brought only against defendants Patel, Kirkpatrick, Kay, Gagalis, Collins, and Skubisz.

**The Legal Standard**

A motion to dismiss for "failure to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When considering a motion to dismiss under Rule 12(b)(6), the court "must assume the truth of all well-plead facts and give the plaintiff[s] the benefit of all reasonable inferences therefrom." Alvarado Aguilera v. Negrón, 509 F.3d 50, 52 (1st Cir. 2007) (quoting Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007)). However, the court need not "credit 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.'" Brown v. Latin Am. Music Co., 498 F.3d 18, 24 (1st Cir. 2007) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)). "[A] complaint is properly dismissed for failure to state a claim 'only if the facts lend themselves to no viable theories of recovery.'" Garnier v. Rodríguez, 506 F.3d 22, 26 (1st Cir. 2007) (quoting Phoung Luc v. Wyndham Mgmt. Corp., 496 F.3d 85, 88 (1st Cir. 2007)).

**Background**

The SEC alleges that from March 2000 through December 2001, various employees, officers, and directors of Cabletron Systems, Inc. ("Cabletron") or its former subsidiaries, Enterasys Networks, Inc. ("Enterasys") and Aprisma Management Technologies, Inc. ("Aprisma") participated in a company-wide scheme to inflate the revenues of Cabletron and Enterasys for the purpose of convincing investors that Enterasys was a viable independent company with consistently strong revenue growth.  Collins served as Enterasys's Controller from March 2000 through December 2001.

Turning to the conduct at issue in this case, the SEC alleges that Enterasys improperly recognized revenue, reported that improperly recognized revenue in SEC filings and press releases, and misrepresented material information concerning improper revenue recognition to outside auditors, or concealed such information from them.  According to the SEC, Enterasys improperly recognized at least $48 million in revenue, thus allowing it to overstate earnings, understate operating losses, and successfully launch itself as an independent public company on August 6, 2001.

The SEC alleges that improperly recognized revenue was produced by several kinds of transactions: (1) contingent sales

3

(detailed in undisclosed side agreements with purchasers) that allowed, for example, full return, exchange, or cancellation rights; (2) investments in privately held companies that agreed to use their investment proceeds to purchase Enterasys and Aprisma products; and (3) so-called "three-corner deals" that involved placing another company between Enterasys and an investee company, to disguise purchases of Enterasys products made with funds invested by Enterasys in the purchasing company. The complaint discusses in greater detail twelve separate contingent sales transactions or investment deals (Compl. ¶¶ 63-137) and mentions in lesser detail seventeen additional sales transactions (¶¶ 138-55) for which the SEC claims that Enterasys recognized revenue not subject to recognition under Generally Accepted Accounting Principles ("GAAP").

Collins is mentioned by name in the factual allegations concerning: (1) a side agreement between Enterasys and Ariel International Technology Co. Ltd. ("Ariel") which resulted in the improper recognition of $3.9 million in revenue for the second quarter of Transition Year 2001 (Compl. ¶¶ 74-84); (2) an improper side agreement between Enterasys and Societe General Cowen ("SG Cowen") (¶¶ 97-103); (3) improper recognition of $500,000 in revenue from sales to Accton Technology Corp. ("Accton") during the first quarter of Transition Year 2001

(¶ 148); and (4) improper recognition of $1.5 million in revenue from sales to JBS Communications, Inc. ("JBS") during the second and third quarters of Transition Year 2001 (¶ 155).

Regarding the Ariel side agreement, the complaint alleges that Collins was informed, by an e-mail sent to him, to Robert Gagalis,[2] and to Hor Chong (David) Boey,[3] that revenue from the sale to Ariel should not have been recognized because Enterasys had both agreed to be responsible for reselling the underlying product and granted Ariel extended payment terms.  (Compl. ¶ 76.) The complaint goes on to allege that Collins, Gagalis, and Bruce Kay[4] "decided that the letter agreement [with Ariel] should not be provided to Enterasys's outside auditor."  (¶ 77.)  Finally, the complaint alleges that Boey negotiated with Ariel to move the offending terms from the original letter agreement to an undisclosed side agreement, and then modified the letter agreement by creating a new backdated first page and inserting

---

[2] Gagalis served as Enterasys's Executive Vice President, Chief Financial Officer, and Treasurer from July 2001 through October 2002.

[3] Boey served as Vice President of Finance for Enterasys's Asia Pacific region during the relevant period.

[4] Kay served as Cabletron's Controller from February 1999 to June 2000, as Enterasys's Chief Financial Officer from June 2000 until July 2001, and as Enterasys's Senior Vice President of Finance from July until October 2001.

fabricated terms to replace those that had been moved to the side agreement.  (¶ 80.)  Boey forwarded the new Ariel agreement to Gagalis and Kay, who forwarded it to Anthony Hurley,[5] who presented it to the outside auditor, after advising both Kay and Collins of his intention to do so.  (¶ 81.)

Regarding the Aacton transaction, the complaint alleges that "[a]t the time Enterasys recognized [$500,000 in] revenue from sales to Accton, [Jerry] Shanahan,[6] Collins, and Kay knew that Accton had purchased product to assist Enterasys in meeting its revenue goals, that Accton did not need the product, and that Accton intended to return the purchased product."  (Compl. ¶ 148.)  The SEC also alleges that under the foregoing circumstances, "Shanahan, Collins and Kay knew that it was improper to recognize sales to Accton."  (Id.)

Regarding the JBS transaction, the complaint alleges that "[a]t the time Enterasys recognized [$1.5 million in] revenue from sales to JBS, Boey, Collins, and Kay knew that Enterasys was

---

[5] Hurley served as Enterasys's Assistant Controller from October 1998 through November 2002.

[6] Shanahan served as Cabletron's Vice President of International Operations from February to September 2000, as Cabletron's Executive Vice President of Operations and Quality from September 2000 to March 2001, and as Enterasys's Chief Operating Officer from March 2001 until May 2002.

responsible for reselling the underlying product to CTC [Technology Corp.] and that this continuing obligation, which these Defendants failed to disclose, precluded revenue recognition." (Compl. ¶ 155.)

Regarding the SG Cowen transaction, the complaint alleges that Gagalis, Shanahan, and Collins agreed to – but never actually executed – a plan to conceal nearly $2 million in product returns in order to avoid a revenue reversal. (Compl. ¶ 103.) The SEC included the SG Cowen transaction in the complaint to demonstrate scienter on the part of Gagalis, Shanahan, and Collins. (Id.)

The complaint further alleges that at Gagalis' direction, Hurley prepared and sent Enterasys's outside auditor a summary statement concerning revenues from three-corner deals that Collins knew to be false, because it concealed the true nature of $7.6 million in revenue from sales to companies in which Enterasys had made investments. (Compl. ¶ 167.)

The SEC asserts that any public statement of earnings that included improperly recognized revenue was materially false, and that Enterasys made such statements in: one SEC 10-K form, six SEC 10-Q forms, three SEC 8-K forms, fourteen representation

letters, and seven press releases.  (Compl. ¶ 36.)  The complaint
then specifies the amount of overstated revenue and understated
losses reported in each of the identified SEC filings (¶¶ 37-53),
and provides similar specifications for the press releases (¶¶
171-87).  Collins is not alleged to have prepared or signed any
of the SEC filings or to have participated in the drafting or
issuance of any of the press releases.


## Discussion

Collins moves to dismiss, arguing that all eight claims
against him should be dismissed because: (1) all the claims in
the complaint "sound in fraud;" (2) any claim that sounds in
fraud must be pled with particularity in accordance with Rule
9(b) of the Federal Rules of Civil Procedure; and (3) the facts
concerning the Ariel, SG Cowen, Accton, and JBS transactions –
the only four in which Collins is alleged to have participated –
are not alleged in a manner that states a claim in accordance
with the dictates of Rule 9(b).  He further argues that: (1) the
SEC has failed to state a claim against him based upon any of the
twenty-five sales transactions in which he is not alleged by name
to have taken part; (2) his participation in formulating the SG
Cowen transaction cannot support a claim against him because that
transaction was never executed; (3) Counts I and III fail because
the SEC has not alleged that he "substantially participated in"

8

the wrongful conduct that underlies those claims or that he acted with the requisite scienter; and (4) Count VIII does not state a claim upon which relief can be granted because the complaint alleges no facts regarding Enterasys's system of internal accounting controls and alleges no facts linking him to any such system.  Collins also argues that if the complaint is not dismissed, then all the factual allegation concerning the twenty-five sales transactions in which he is not alleged by name to have taken part should be stricken as to him.

In response to Collins' Rule 9(b) argument, the SEC contends that: (1) only Counts I and III are subject to the Rule 9(b) pleading requirement; (2) the complaint alleges the time, place, and content of Collins' fraudulent conduct; and (3) the complaint specifically describes the transaction in which Collins was involved.  And in response to Collins' Rule 12(b)(6) arguments, the SEC contends that: (1) the transactions in which Collins is not named nonetheless support the claims against him; (2) the unconsummated SG Cowen transaction demonstrates that Collins acted with scienter; and (3) Collins is urging the court to adopt an incorrect standard for the scienter element of Counts I and III.  The SEC also contends that Collins' Rule 12(b)(6) argument concerning Count VIII is based upon a misunderstanding of the purposes of section 13(b)(2)(B) of the Exchange Act, 15 U.S.C.

§ 78m(b)(2).

A.  Applicability of Rule 9(b) to Counts II and IV-VIII

The parties first engage on the correct pleading standard relative to Counts II and IV through VIII.  Relying upon the "sounds in fraud" doctrine, Collins argues that the entire complaint must meet the pleading standard set by Rule 9(b).  The SEC says, to the contrary, that the six disputed claims need not meet that standard because: (1) those claims do not require allegations of fraud or scienter; (2) the First Circuit has not adopted the "sounds in fraud" doctrine; (3) it is entitled to pursue claims based upon both fraudulent and non-fraudulent conduct in the same action; and (4) adoption of the "sounds in fraud" doctrine would impermissibly elevate, by judicial fiat, the pleading standards of the Federal Rules of Civil Procedure. Collins has the better argument.

A recent decision in the Ninth Circuit, on which Collins relies, describes the "sounds in fraud" doctrine:

Although section 11 does not contain an element of fraud, a plaintiff may nonetheless be subject to Rule 9(b)'s particularity mandate if his complaint "sounds in fraud":

[T]he plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim.  In

10

that event, the claim is said to be "grounded in
fraud" or to "sound in fraud," and the pleading of
that claim as a whole must satisfy the
particularity requirement of Rule 9(b).

Vess [v. Ciba-Geigy Corp. USA], 317 F.3d [1097,] 1103–
04 [(9th Cir. 2003)]; see also [Anderson v. Clow (]In
re Stac [Elecs. Sec. Litig.)], 89 F.3d [1399,] 1404–05
[(9th Cir. 1996)] ("We now clarify that the
particularity requirements of Rule 9(b) apply to claims
brought under Section 11 [of the 1933 Securities Act]
when, as here, they are grounded in fraud.").

Sparling v. Daou (In re Daou Sys., Inc., Sec. Litig.), 411 F.3d

1006, 1027 (9th Cir. 2005).

The First Circuit acknowledged the "sounds in fraud"

doctrine approvingly in Shaw v. Digital Equipment Corp., 82 F.3d

1194, 1223 (1st Cir. 1996), superseded on other grounds,[7] but did

---

[7] The court expressed its approval of the doctrine in the
following way:

Fraud is not an element of a claim under either
Section 11 or 12(2), and a plaintiff asserting such
claims may avoid altogether any allegations of scienter
or reliance.  See Shapiro [v. UJB Fin. Corp.], 964 F.2d
[272,] 288 [(3d Cir. 1992)]; Lucia v. Prospect St. High
Income Portfolio, Inc., 769 F. Supp. 410, 416 (D. Mass.
1991), aff'd, 36 F.3d 170 (1st Cir. 1994).  However,
despite the minimal requirements of Sections 11 and
12(2), a complaint asserting violations of those
statutes may yet "sound[ ] in fraud."  Haft v. Eastland
Financial Corp., 755 F. Supp. 1123, 1126 (D.R.I. 1991).
For example, if a plaintiff were to attempt to
establish violations of Sections 11 and 12(2) as well
as the anti-fraud provisions of the Exchange Act
through allegations in a single complaint of a unified
course of fraudulent conduct, fraud might be said to
"lie[ ] at the core of the action."  Hayduk v. Lanna,

not formally adopt it because the complaint in that case
"avoid[ed] grounding its Section 11 and 12(2) claims on any
allegation of fraud," id.  However, in Suna v. Bailey Corp., 107
F.3d 64 (1st Cir. 1997), the court stated that "we need not
decide whether [plaintiffs'] Section 12(2) claim sufficiently
sounds in fraud such that Rule 9(b)'s pleading requirements
apply" because the plaintiffs failed to identify any untrue
statements of material fact or any omissions of material facts
that rendered a previous statement misleading, id. at 71.  While
it does not directly so hold, Suna plainly assumes that the
"sounds in fraud" doctrine is the law of this circuit.  Moreover,
the doctrine has been applied in securities litigation in
district courts throughout the circuit.  See, e.g., In re Tyco
Int'l Ltd., MDL No. 02-md-1335-PB, Civil No. 04-cv-1336-PB, 2007
WL 1687775, at *8 (D.N.H. June 11, 2007); In re Sonus Networks,
Inc. Sec. Litig., No. Civ.A.04-10294, 2006 WL 1308165, at *5
(D. Mass. May 10, 2006); Haft, 772 F. Supp. at 1317.

---

        775 F.2d 441, 443 (1st Cir. 1985).  In such a case, the
        particularity requirements of Rule 9(b) would probably
        apply to the Sections 11, 12(2), and Rule 10b-5 claims
        alike.  "It is the allegation of fraud, not the 'title'
        of the claim that brings the policy concerns
        [underlying Rule 9(b)] . . . to the forefront."  Haft,
        755 F. Supp. at 1133; accord Shapiro, 964 F.2d at 287-
        88 (applying Rule 9(b) to Section 11 and 12(2) claims
        "grounded in fraud"); Lucia, 769 F. Supp. at 416-17
        (same).

Shaw, 82 F.3d at 1223.

Accordingly, the court adopts the "sounds in fraud" doctrine to assess the sufficiency of the SEC's pleadings.[8]  The important question now becomes whether the SEC's complaint sounds in fraud.

In <u>Daou Systems</u>, the Ninth Circuit held that the plaintiff's complaint sounded in fraud, and all of its claims were subject to Rule 9(b), because: (1) the first sentence of the complaint characterized the action as having been "brought on behalf of a class of purchasers of Daou Systems, Inc. . . . common stock [during the class period], seeking damages resulting from a fraudulent scheme and course of business by defendants, which harmed [such] purchasers," 411 F.3d at 1028; (2) the complaint alleged myriad knowing misrepresentations upon which plaintiffs relied to their detriment, <u>id.</u>; and (3) "[t]he complaint fully incorporate[d] all allegations previously averred in the complaint for purposes of all their claims," <u>id.</u>  In other words, each claim in the complaint made a "wholesale adoption" of the securities fraud allegations, thus causing the court to conclude that "all of plaintiffs' claims, whether including an element of

---

[8] In so doing, the court rejects the SEC's apparent contention that the "sounds in fraud" doctrine applies only to private securities actions.  <u>See</u> <u>SEC v. Lucent Techs., Inc.</u>, 363 F. Supp. 2d 708, 727 (D.N.J. 2005) (applying "sounds in fraud" theory to section 13 claim in SEC enforcement action).

fraud or not, must satisfy the heightened pleading standard set out in Rule 9(b)."  Id. (citation omitted).

Here, the SEC's complaint characterizes the action as arising out of the defendants' "financial fraud" (Compl. ¶ 4), which consisted of "a company-wide scheme to inflate revenues of Enterasys . . . and thereby convince investors that Enterasys was a viable independent company" (¶ 1), and which involved "falsely reporting" revenues to the SEC, the public, and Enterasys's outside auditor (¶¶ 2-3).  Moreover, as in Daou Systems, the plaintiff in this case made a "wholesale adoption" of the fraud allegations for each of the complaint's claims by beginning each count with a reallegation of all 187 paragraphs that preceded the first paragraph of Count I.  Accordingly, the court has little difficulty concluding that all eight of plaintiff's claims sound in fraud, and, therefore, are  subject to the pleading requirements of Rule 9(b).

B.  Rule 9(b)

The version of Rule 9(b) in effect when the SEC filed its complaint provided that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

14

with particularity."  FED. R. CIV. P. 9(b).[9]  The rule further

provided that "[m]alice, intent, knowledge, and other

condition[s] of mind of a person may be averred generally."  Id.

"In applying [the Rule 9(b)] standard to securities fraud

actions, this circuit has been notably strict and rigorous."  SEC

v. Durgarian, 477 F. Supp. 2d 342, 348 (D. Mass. 2007) (citing

Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir.

1999)).


    The particularity "requirement 'entails specifying in the

pleader's complaint the time, place, and content of the alleged

false or fraudulent representations.'"  Arruda v. Sears, Roebuck

& Co., 310 F.3d 13, 19 (1st Cir. 2002) (quoting Powers v. Boston

Cooper Corp., 926 F.2d 109, 111 (1st Cir. 1991)); see also In re

StockerYale Sec. Litig., 453 F. Supp. 2d 345, 350 (D.N.H. 2006)

("The rule requires that the particular times, dates, places, or

other details of the alleged fraudulent involvement of the actors

be alleged.").  In addition, "general averments of the

defendants' knowledge of material falsity will not suffice."

Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 361 (1st

Cir. 1994) (citing Greenstone v. Cambex Corp., 975 F.2d 22, 25

---

    [9] Rule 9(b) was amended effective December 1, 2007, but the
Advisory Committee Notes to the Federal Rules explain that the
2007 amendment was "intended to be stylistic only."

(1st Cir. 1992)), <u>superseded by statute on other grounds</u>, 15

U.S.C. § 74u-4(b)(2), <u>as recognized in</u> <u>Greebel</u>, 194 F.3d at 197.

Rather, "[c]onsistent with Fed. R. Civ. P. 9(b), the complaint

must set forth specific facts that make it reasonable to believe

that defendant[s] knew that a statement was materially false or

misleading." <u>Serabian</u>, 24 F.3d at 361 (citation and internal

quotation marks omitted).  Allegations of fraud must be organized

"into discrete units that are, standing alone, each capable of

evaluation." <u>StockerYale</u>, 453 F. Supp. 2d at 350 (quoting <u>In re</u>

<u>Boston Tech., Inc. Sec. Litig.</u>, 8 F. Supp. 2d 43, 55-56 (D. Mass.

1998)).  And, "where . . . 'multiple defendants are involved,

each defendant's role in the fraud must be particularized.'"

<u>Manchester Mfg. Acquisitions, Inc. v. Sears, Roebuck & Co.</u>, 802

F. Supp. 595, 600 (D.N.H. 1992) (quoting <u>Shields v. Amoskeag Bank</u>

<u>Shares, Inc.</u>, 766 F. Supp. 32, 40 (D.N.H. 1991)).


Regarding the mechanics of applying the Rule 9(b) pleading

standard to a cause of action that does not otherwise contain an

element of fraud, the Ninth Circuit has explained:


     In a case where fraud is not an essential element
of a claim, only allegations of fraudulent conduct must
satisfy the heightened pleading requirements of Rule
9(b). <u>Vess</u>, 317 F.3d at 1105.  "Allegations of non-
fraudulent conduct need satisfy only the ordinary
notice pleading standards of Rule 8(a)." <u>Id.</u>  As the
Fifth Circuit wrote:

> Where averments of fraud are made in a claim in
> which fraud is not an element, an inadequate
> averment of fraud does not mean that no claim has
> been stated.  The proper route is to disregard
> averments of fraud not meeting Rule 9(b)'s
> standard and then ask whether a claim has been
> stated.

Id. (citing Lone Star Ladies Inv. Club v. Schlotzsky's
Inc., 238 F.3d 363, 368 (5th Cir. 2001) ("Lone Star"))
(emphasis added in Vess).  As the Eighth Circuit
elaborated:

> The only consequence of a holding that Rule 9(b)
> is violated with respect to a § 11 claim would be
> that any allegations of fraud would be stripped
> from the claim.  The allegations of innocent or
> negligent misrepresentation, which are at the
> heart of a § 11 claim, would survive.

Id. (citing Carlon v. Thaman (In re NationsMart Corp.
Sec. Litig.), 130 F.3d 309, 315 (8th Cir. 1997))
(emphasis added in Vess).  "Thus, if particular
averments of fraud are insufficiently pled under Rule
9(b), a district court should 'disregard' those
averments or 'strip' them from the claim.  The court
should then examine the allegations that remain to
determine whether they state a claim."  Id.

A district court need not rewrite a deficient
complaint however.  Lone Star, 238 F.3d at 368.  Rule
9(b) may prove fatal to 1933 Securities Act claims
"grounded in fraud" when the complaint makes a
"wholesale adoption" of the securities fraud
allegations for purposes of the Securities Act claims.
Id. (citations, internal quotation marks, and emphasis
omitted).  In such cases,

> a district court is not required to sift through
> allegations of fraud in search of some "lesser
> included" claim of strict liability.  It may
> dismiss.  If it does so, it should ordinarily
> accept a proffered amendment that either pleads
> with the requisite particularity or drops the
> defective allegations and still states a claim.

Id. at 368–69.

17

<u>Daou Sys.</u>, 411 F.3d at 1027–28.

C.  The SEC's Claims

According to Collins, the complaint's descriptions of the transactions that support all eight claims fail to allege fraud with the specificity required by Rule 9(b).  The SEC counters that the complaint adequately alleges the time, place, and content of all of Collins' fraudulent conduct.  While Collins frames the issue in terms of the adequacy of the factual allegations concerning Enterasys's transactions with Ariel, SG Cowen, Accton, and JBS, the better approach, in light of <u>Daou Systems</u>, is to consider Collins' Rule 9(b) argument on a claim-by-claim basis.

<u>Counts I & III</u>

In Count I, the SEC claims that all defendants violated Securities Act section 17(a)(1), which provides that "[i]t shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly . . . to employ any device, scheme or artifice to defraud."  15 U.S.C. § 77q(a)(1).  In Count III, the

SEC claims that all defendants violated Exchange Act section

10(b), which provides that

> [i]t shall be unlawful for any person, directly or
> indirectly, by the use of any means or instrumentality
> of interstate commerce or of the mails, or any facility
> of any national security exchange . . . [t]o use or
> employ, in connection with the purchase or sale of any
> security . . . any manipulative or deceptive device or
> contrivance in contravention of such rules and
> regulations as the [Securities and Exchange] Commission
> may prescribe . . . .

15 U.S.C. § 78j(b).  The SEC further asserts in Count III that

all defendants violated Exchange Act Rule 10b-5, which provides:

> It shall be unlawful for any person, directly or
> indirectly, by the use of any means or instrumentality
> of interstate commerce, or of the mails or of any
> facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to
> defraud,
>
> (b) To make any untrue statement of a material
> fact or to omit to state a material fact necessary in
> order to make the statements made, in the light of the
> circumstances under which they were made, not
> misleading, or
>
> (c) To engage in any act, practice, or course of
> business which operates or would operate as a fraud or
> deceit upon any person,
>
> in connection with the purchase or sale of any
> security.

17 C.F.R. § 240.10b-5.  In Count III, the SEC asserts that all

defendants are liable for primary violations of section 10(b) and

Rule 10b-5 and, in the alternative, that they aided and abetted
Enterasys in violating section 10(b) and Rule 10b-5.

"The elements of an action for securities fraud under
Section 10(b) of the Exchange Act (and Rule 10b-5 thereunder) and
Section 17(a)(1) of the Securities Act are substantially the same
under the Supreme Court's precedents."  SEC v. Tambone (Tambone
I), 417 F. Supp. 2d 127, 131 (D. Mass. 2006) (citing Aaron v.
SEC, 446 U.S. 680, 695 (1980); Ernst & Ernst v. Hochfelder, 425
U.S. 185, 196 (1976)).

> To succeed on a claim for liability under those
> provisions the SEC must show that 1) defendants engaged
> in fraudulent conduct, 2) in connection with the
> purchase or sale of securities, 3) through the means or
> instruments of transportation or communication in
> interstate commerce or the mails and 4) with the
> requisite scienter.

Tambone I, 417 F. Supp. 2d at 131 (citing SEC v. Graystone Nash,
Inc., 820 F. Supp. 863, 870-71 (D.N.J. 1993)).  Moreover,

> [t]o establish that a defendant engaged in
> "fraudulent conduct" as defined by the securities laws,
> the SEC must show that the defendant: 1) made an untrue
> statement of material fact, 2) omitted a fact that
> rendered a prior statement misleading or 3) committed a
> manipulative or deceptive act as part of a scheme to
> defraud.

Tambone I, 417 F. Supp. 2d at 131-32 (citing Gross v. Summa Four,
Inc., 93 F.3d 987, 992 (1st Cir. 1996), superseded by statute on

other grounds; SEC v. Randy, 38 F. Supp. 2d 657, 668 (N.D. Ill. 1999)).  Under the first two grounds for liability, material misstatement or omission, "[i]n order to be liable for a primary violation . . . a defendant must have personally made either an allegedly untrue statement or a material omission."  Tambone I, 417 F. Supp. 2d at 132 (emphasis added).

> The Second Circuit Court of Appeals explained, in the context of Section 10(b), that
>
>> a defendant must actually make a false or misleading statement in order to be held [primarily] liable under Section 10(b).  Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger [primary] liability under Section 10(b).

Tambone I, 417 F. Supp. 2d at 132 (quoting Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998)) (emphasis added).

Given the way the SEC has stated its claims in Counts I and III – incorporating by reference all 187 paragraphs of factual allegations and closely paraphrasing the statutes and rule upon which it relies – it is difficult to determine whether the alleged fraudulent conduct underlying those claims consists of an untrue statement of fact, the omission of a fact necessary to make a prior statement not misleading, or some other manipulative or deceptive act.  It is similarly difficult to discern precisely

what statements by Collins, if any, the SEC alleges to have been false. However, in its objection to Collins' motion to dismiss, the SEC contends – without either legal or factual support – that "Collins is personally liable for the misstatements that were made in the SEC filings" (Pl.'s Obj. at 12), which clarifies the matter somewhat. Moreover, Daou Systems, a revenue recognition case upon which the SEC relies, treats improper revenue recognition not as a manipulative or deceptive act undertaken as part of a scheme to defraud, but, rather, as a material misrepresentation or omission. 411 F. 3d at 1016. So, too, will this court. Thus, the question is whether the SEC has met the Rule 9(b) pleading standard with regard to its claims in Counts I and III that Collins is liable for material misrepresentations concerning Enterasys's revenues that were reported in the company's SEC filings.

To establish the pleading requirement imposed by Rule 9(b) in this case, the SEC directs the court's attention to the following language:

> When pleading irregularities in revenue recognition, plaintiffs should allege "(1) 'such basic details as the approximate amount by which revenues and earnings were overstated'; (2) 'the products involved in the contingent transaction'; (3) 'the dates of any of the transactions'; or (4) 'the identities of any of the customers or [company] employees involved in the transactions.'" In re McKesson [HBOC, Inc. Sec.

> Litig.], 126 F. Supp. 2d [1248,] 1273 [(N.D. Cal.
> 2000)] (quoting Greebel, 194 F.3d at 204 (alteration in
> McKesson). Plaintiffs need not allege each of those
> particular details, see Greebel, 194 F.3d at 204, but
> they must allege enough information so that "a court
> can discern whether the alleged GAAP violations were
> minor or technical in nature, or whether they
> constituted widespread and significant inflation of
> revenue." In re McKesson, 126 F. Supp. 2d at 1273.

Daou Sys., 411 F.3d at 1016-17. Arguably, the SEC's complaint in

this case meets that standard. But that is not the end of the

matter.


The Daou Systems court also explained, under the heading

"Material Misrepresentations or Omissions":

> If "[p]roperly pled, overstating of revenues may
> state a claim for securities fraud, as under GAAP,
> 'revenue must be earned before it can be recognized.'"
> Hockey v. Medhekar, 30 F. Supp. 2d 1209, 1216 (N.D.
> Cal. 1998) (quoting Provenz v. Miller, 102 F.3d 1478,
> 1484 (9th Cir. 1996)) (emphasis in original). "To
> properly state a claim for accounting fraud, plaintiffs
> must 'plead facts' sufficient to support a conclusion
> that [d]efendant[ ] prepared the fraudulent financial
> statements and that the alleged financial fraud was
> material." In re Peerless Systems, Corp. Sec. Litig.,
> 182 F. Supp. 2d 982, 991 (S.D. Cal. 2002) (citations
> omitted) (alterations in original).

Daou Sys., 411 F.3d at 1016 (emphasis added); see also Tambone I,

417 F. Supp. 2d at 132 ("In order to be liable for a primary

violation of Section 10(b) of the Exchange Act and Section 17(a)

of the Securities Act, a defendant must have personally made

either an allegedly untrue statement or a material omission."). While the SEC arguably has pled with adequate specificity the basic facts concerning the customers, dates, and amounts involved in the transactions from which Enterasys improperly recognized revenue, it has not pled facts sufficient to support a conclusion that Collins prepared any fraudulent financial statements or personally made a false or misleading statement about Enterasys's revenues.

As a general matter, the complaint identifies Collins as Enterasys's controller from March 2000 through December 2001, and notes that he was licensed as a CPA in Maine from 1984 through 1987.  But the complaint alleges no facts that link Collins to the allegedly false SEC reports submitted by Enterasys. Specifically, the complaint identifies Gagalis, Piyush Patel,[10] David Kirkpatrick,[11] and Enrique Fiallo[12] – but not Collins – as

---

[10] Patel served as Cabletron's Chief Executive Officer, President, and Chairman of the Board of Directors from June 1999 until August 2001.  Thereafter, he served as a consultant to Enterasys and Aprisma.

[11] Kirkpatrick served as Cabletron's Chief Financial Officer from August 1990 to August 2001, as Cabletron's Chief Operating Officer from October 2000 to August 2001, as Aprisma's Chief Operating Officer from August 2001 until March 2002, as a member of Aprisma's Board of Directors from August 2001 until March 2002, and as Chairman of the Board from January 2002 until March 2002.

[12] Fiallo served as Cabletron's Executive Vice President and Chief Information Officer from November 1998 to February 2000, as

the Enterasys officers who signed and caused to be filed those

SEC reports, and alleges no facts concerning Collins' role in

providing information to be included in them.  While the absence

of an allegation that Collins signed the SEC forms is not

necessarily fatal to the SEC's claims against Collins, see Hurley

v. FDIC, 719 F. Supp. 27, 32 (D. Mass. 1989), the SEC has failed

to allege facts to support an assertion that Collins was in a

position similar to that of the non-signatory in Hurley, who was

alleged to have been "the bank officer directly responsible for

supervising the bank's lending operations," id., and "directly

responsible for supervising the lending practices that plaintiffs

allege[d] should have been disclosed," id. at 33.  Moreover, to

the extent the court of appeals for this circuit recognizes the

"group pleading doctrine[, which] is a judicial presumption that

statements in group-published documents including annual reports

and press releases are attributable to officers and directors who

have day-to-day control or involvement in regular company

operations," Winer Family Trust v. Queen, 503 F.3d 319, 335 (3d

Cir. 2007), it recognizes only "a limited version . . . for

securities fraud, which, although characterized as 'group

pleading' in essence require[s] specific indicia of [a]

---

Enterasys's President from February 2000 to August 2001, and as
Enterasys's President, Chairman, and Chief Executive Officer from
August 2001 until April 2002.

defendants' direct participation in making the alleged offending statement," id. (citing Serabian, 24 F.3d at 367–68)).  In sum, the SEC has not alleged that Collins made any false statements that would subject him to liability under Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, or Rule 10b–5. See Mesko v. Cabletron Sys., Inc. (In re Cabletron Sys., Inc.), 311 F.3d 11, 41 (1st Cir. 2002) (dismissing section 10(b) claim against defendant who was not alleged to have signed the Form 10–K because "the complaint fail[ed] to connect [the defendant] specifically to any of the materially misleading statements that [the court] found [to] survive the PSLRA pleading requirements").

Next the court turns to the specific transactions at issue, which is where the parties have focused most of their own attention.  The complaint does not allege that any revenue was improperly recognized in connection with the SG Cowen transaction.  Consequently, allegations concerning Collins' participation in that transaction cannot support a securities fraud claim.  Regarding the Accton and JBS transactions, the complaint alleges only that Collins possessed information about them that made revenue recognition improper, but alleges no facts concerning Collins' role in preparing fraudulent financial statements reporting those revenues.  The Ariel transaction stands on a footing that is only somewhat different.  With regard

to that transaction, the complaint alleges that Collins and others decided not to provide Enterasys's outside auditor with copies of the original letter agreement with Ariel, and was advised by Hurley of Hurley's submission of a falsified Ariel agreement to the auditor.  But, as with the Accton and JBS transactions, the allegations concerning the Ariel transaction include no facts sufficient to support a conclusion that Collins prepared a fraudulent financial statement that overstated Enterasys's revenues.  Because the complaint does not allege that Collins prepared any financial statements or made any other statements about Enterasys's revenue, it, necessarily, does not specify the time, place, or content of any false or fraudulent representation attributable to Collins.  See Arruda, 310 F.3d at 19 (citation omitted).  Thus, the SEC has failed adequately to plead that Collins is subject to primary liability for violating Securities Act section 17(a), Exchange Act section 10(b), or Exchange Act Rule 10b-5.

The SEC also asserts, in Count III, that Collins is liable for aiding and abetting Enterasys in violating Exchange Act section 10(b) and Rule 10b-5.  With regard to aider and abettor liability, the Exchange Act provides:

> For purposes of any action brought by the [Securities and Exchange] Commission under paragraph

> (1) or (3) of section 78u(d) of this title, any person
> that knowingly provides substantial assistance to
> another person in violation of a provision of this
> chapter, or of any rule or regulation issued under this
> chapter, shall be deemed in violation of such provision
> to the same extent as the person to whom such
> assistance is provided.

15 U.S.C. § 78t(e).  Specifically,

> [l]iability for aiding and abetting securities fraud
> under [Exchange Act section 10(b)] attaches only upon a
> showing that: 1) a primary violation was committed, 2)
> the defendant[ ] had a general awareness that [his]
> conduct was part of an overall activity that was
> improper, and 3) the defendant[ ] knowingly and
> substantially assisted in the primary violation.

SEC v. Tambone (Tambone II), 473 F. Supp. 2d 162, 167–68 (D.

Mass. 2006) (citing SEC v. Druffner, 353 F. Supp. 2d 141, 150

(D. Mass. 2005)).  "[M]ere awareness and approval of the primary

violation is insufficient to make out a claim for substantial

assistance."  SEC v. Power, 525 F. Supp. 2d 415, 422 (S.D.N.Y.

2007) (quoting SEC v. Treadway, 430 F. Supp. 2d 293, 339

(S.D.N.Y. 2006)).  Rather, "[t]he aider and abettor's substantial

assistance must be a proximate cause of the primary violation."

Power, 525 F. Supp. 2d at 422 (citation omitted).


     In Druffner, the substantial assistance alleged in the

complaint consisted of the defendant's "1) approving additional

account numbers and FA numbers, 2) authorizing the processing of

unfinished transactions at the New York office and 3) <u>failing to</u>
<u>stop</u> the brokers' fraudulent activity after he received numerous
block letters complaining of such activity when he had a duty as
Branch Manager to do so."  353 F. Supp. 2d at 151 (emphasis
added).  According to the court, "[s]uch allegations involve[d]
specific instances of <u>affirmative conduct</u> that support[ed] the
charge that [the defendant] aided and abetted the brokers'
securities law violations."  <u>Id.</u> (emphasis added).  And in <u>Power</u>,
an enforcement action against a former Vice President of Tyco
International Ltd. ("Tyco"), the court denied the defendant's
motion to dismiss based upon the SEC's factual allegations that
the defendant: (1) <u>created</u> a form of transaction that was
"designed . . . to have a specific and false accounting effect,"
525 F. Supp. 2d at 418; (2) <u>was responsible for</u> fraudulent
acquisition accounting that reduced Tyco's assets and increased
its liabilities, <u>id.</u>; (3) <u>proposed</u> an asset write-off that was
implemented with the effect of inflating "Tyco's reported income
improperly by reducing its depreciation expenses," <u>id.</u>; (4)
<u>oversaw</u> various fraudulent accounting decisions in a 1999
acquisition, <u>id.</u>; and (5) "<u>directed</u> the entry of multiple
improper pre-merger adjustments," <u>id.</u> (emphasis added).

    Here, by contrast, the complaint alleges that: (1) the Ariel
letter agreement <u>was circulated to</u> Collins and others (Compl.

¶ 75); (2) Collins and others <u>received</u> e-mails from Kay and others about the Ariel agreement (¶ 76); (3) Collins and others <u>decided</u> not to provide the Ariel letter agreement to Enterasys's outside auditor (¶ 77); (4) Collins <u>was advised by</u> Hurley of Hurley's intent to submit a falsified version of the Ariel agreement to Enterasys's outside auditor (¶ 81); (5) Collins and others <u>agreed to a plan</u>, never executed, to conceal SG Cowen's return of products it had purchased from Aprisma (¶ 103); (6) Collins <u>knew</u> that it was improper to recognize revenue from the Accton transaction (¶ 148); (7) Collins <u>knew</u>, and <u>failed to disclose</u> – to whom, the complaint does not say – that Enterasys was responsible for reselling the products it sold to JBS, making it improper to recognize revenue from that transaction (¶ 155); and (8) Collins <u>knew</u> of the falsity of the summary of investment-related revenue that Hurley prepared at Gagalis' direction and submitted to the outside auditor (¶ 167).  Those are the only factual allegations in the complaint that refer to Collins.  Few, if any, rise to the level of "affirmative conduct," and none of those that arguably do rise to that level specifically link Collins to the primary violation, which is the false reporting of revenue in Enterasys's SEC filings.[13]

--------------------------------------------------

[13] Because the complaint does not adequately allege that Collins substantially assisted in the Ariel, SG Cowen, Accton, and JBS transactions, it is not necessary to determine whether substantial assistance carrying out transactions that produced

The closest the SEC comes to alleging affirmative conduct is its claim that Collins, together with Kay and Gagalis, "decided" not to provide the original Ariel letter agreement to the outside auditor.  But, even assuming that participating in a group decision to withhold the Ariel agreement is the equivalent of actually withholding it, the SEC's allegation falls short of what is needed to support a claim that Collins substantially assisted in the preparation of a fraudulent SEC filing, given the complaint's failure to specify either the Enterasys official(s) who were responsible for providing documentation to the auditor or the reporting relationships among Collins, Kay, and Gagalis, or what role Collins played in (or what influence, authority, or responsibility he had with regard to) "deciding" as part of the group.

Morever, even if Collins' alleged conduct was sufficient to support an aider and abettor claim, that conduct has not been alleged with the particularity required by Rule 9(b).  The SEC alleges that Collins, Gagalis, and Kay decided to withhold the Ariel letter agreement, but goes no further; it does not provide any more particulars about where, when, or under what

---

unrecognizable revenue would also count as substantial assistance in making false statements about revenue in SEC filings, which is the gravamen of the SEC's section 10(b) and Rule 10b-5 claims.

31

circumstances Collins and the others decided not to provide the letter agreement to the auditors, nor does it indicate which of the three was the ultimate decisionmaker.[14]  Without such particulars, the SEC has not adequately alleged conduct by Collins that substantially assisted Enterasys in its primary violation of section 10(b) and Rule 10b-5.  See Arruda, 310 F.3d at 19 (explaining that the complaint must specify "the time, place, and content of the alleged false or fraudulent representations"); StockerYale, 453 F. Supp. 2d at 350 (explaining that Rule 9(b) "requires that the particular times, dates, places, or other details of the alleged fraudulent involvement of the actors be alleged").

To conclude, the SEC has failed to allege with the necessary specificity facts sufficient to support a claim that Collins is liable for a primary securities fraud violation under Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, or Rule 10b-5, or that he is liable as an aider or abettor under

---

[14] According to the complaint, at the time Collins, Kay, and Gagalis decided not to present the Ariel letter agreement to the auditor, Collins was Enterasys's controller, Kay was the Senior Vice President of Finance, and Gagalis was the Executive Vice President, Chief Financial Officer, and Treasurer.  While the complaint is silent as to the chain of command at Enterasys, Collins would appear to have been nearer the bottom than the top.

section 10(b) or Rule 10b-5.  Accordingly, Counts I and III are
dismissed as to Collins.

Count II

Collins moves to dismiss Count II on grounds that the SEC's
complaint does not satisfy Rule 9(b).  In Count II, the SEC
claims that all defendants violated Securities Act sections
17(a)(2) and (3), which provide:

> It shall be unlawful for any person in the offer
> or sale of any securities . . . by the use of any means
> or instruments of transportation or communication in
> interstate commerce or by use of the mails, directly or
> indirectly
>
> . . . .
>
> **(2)** to obtain money or property by means of
> any untrue statement of a material fact or any
> omission to state a material fact necessary in
> order to make the statements made, in the light of
> the circumstances under which they were made, not
> misleading; or
>
> **(3)** to engage in any transaction, practice,
> or course of business which operates or would
> operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a)(2)-(3).

"The requirements for establishing a violation of
[Securities Act] Section 17(a) are nearly the same as those
required for a claim under Securities Exchange Act Section 10(b)

and Rule 10b-5 thereunder, although there is no requirement for
the SEC to demonstrate scienter with respect to subsections
(a)(2) and (a)(3)." <u>Durgarian</u>, 477 F. Supp. 2d at 355 (citing
<u>Aaron</u>, 446 U.S. at 681)).  For the same reasons that support
dismissal of Counts I and III, Count II is also dismissed as to
Collins; the SEC has failed to plead facts sufficient to support
a conclusion that Collins prepared a fraudulent financial
statement or, in any other way, made an untrue statement or
material omission.  <u>See</u> <u>Durgarian</u>, 477 F. Supp. 2d at 355
(dismissing section 17(a) claim for the same reasons that
supported dismissal of section 10(b) and Rule 10b-5 claims).


   <u>Counts IV & V</u>

   Collins moves to dismiss Count IV and V on grounds that the
SEC's complaint does not satisfy Rule 9(b).  In Count IV, the SEC
claims that all defendants violated Exchange Act section
13(b)(5), and, in Count V, the SEC claims that all defendants
violated Exchange Act Rule 13b2-2.  Arguably, Collins' alleged
participation with Kay and Gagalis in the decision to withhold
the original Ariel agreement from Enterasys's auditors, if
properly alleged, might be sufficient to support claims under
both section 13(b)(3), <u>see</u> <u>SEC v. Nacchio</u>, 438 F. Supp. 2d 1266,
1283-84 (D. Colo. 2006) (denying motion to dismiss when defendant
"Mohebbi caused Qwest's books and records to be falsified, in

34

that he allegedly concealed portability deals from Qwest's
accountants so that those accountants would improperly recognize
the IRU revenue"), and Rule 13b2-2, see id.; SEC v. Baxter, No.
C-05-03843, 2007 WL 2013958, at *9 (N.D. Cal. July 11, 2007)
(denying motion to dismiss when complaint alleged that defendant,
who served as vice president of finance and administration and as
acting chief financial officer, failed to inform auditors of
various kinds of material information).  However, for the reasons
already given, Counts IV and V both founder on the Rule 9(b)
particularity requirement.  See Baxter, 2007 WL 2013958, at *8
(applying Rule 9(b) standard to section 13 claims); Lucent, 363
F. Supp. 2d at 727 (same).  Accordingly, Counts IV and V must
also be dismissed as to Collins.

Counts VI-VIII

Collins moves to dismiss Count VI-VIII on grounds that the
SEC's complaint does not satisfy Rule 9(b).  In these three
counts, the SEC claims that defendants aided and abetted
Enterasys in violating: Exchange Act section 13(a) and Exchange
Act Rules 12b-20, 13a-1, 13a-11, and 13a-13 (Count VI); Exchange
Act section 13(b)(2)(A) (Count VII); and Exchange Act section
13(b)(2)(B) (Count VIII).  While the SEC does not specify, in its
complaint, what conduct by Collins violated these statutes and
rules, the only act by Collins that rises to the level of

affirmative conduct constituting substantial assistance was his "decision," along with Kay and Gagalis, to withhold the original Ariel letter agreement from the auditors.  But, as explained above, the SEC has failed to allege facts concerning that act with the particularity required by Rule 9(b).  Accordingly, Counts VI–VIII are dismissed as to Collins.

### Conclusion

For the reasons given, Collins' motion to dismiss (document no. 79) is granted in part.  Specifically, the SEC's claims are dismissed, but not, as Collins requests, with prejudice.  <u>See</u> <u>Daou Sys.</u>, 411 F.3d at 1028 (explaining that when a claim is dismissed for failing to satisfy Rule 9(b), the court "should ordinarily accept a proffered amendment that either pleads with the requisite particularity or drops the defective allegations and still states a claim").

**SO ORDERED.**

_Steven J. McAuliffe_
Steven J. McAuliffe
Chief Judge

March 24, 2008

cc:   James A. Scoggins, II, Esq.
      Jeffrey S. Lyons, Esq.
      Leslie J. Hughes, Esq.
      Nancy J. Gegenheimer, Esq.
      Diana K. Lloyd, Esq.
      John R. Baraniak, Jr., Esq.
      Lucy J. Karl, Esq.
      Peter B. Moores, Esq.
      Steven M. Gordon, Esq.
      Jeffrey B. Rudman, Esq.
      Jonathan A. Shapiro, Esq.
      Miranda Hooker, Esq.
      Peter A. Spaeth, Esq.
      Bruce A. Singal, Esq.
      John C. Kissinger, Esq.
      Michelle R. Peirce, Esq.
      Mark B. Dubnoff, Esq.
      Richard J. McCarthy, Esq.
      Michael D. Ramsdell, Esq.
      Jennifer M. Ryan, Esq.
      Maria R. Durant, Esq.
      William H. Kettlewell, Esq.
      Kevin E. Sharkey, Esq.
      Ann Pauly, Esq.
      Victor W. Dahar, Esq.
      Andrew Good, Esq.
      Philip G. Cormier, Esq.
      Peter D. Anderson, Esq.
      William Cintolo, Esq.