UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION<br><br>     Plaintiff,<br> v.<br><br>ERIC JAEGER, JERRY A. SHANAHAN,<br><br>     Defendants | Civ. No. 01:07-00039-SM |

**RESPONSE TO ERIC JAEGER'S MOTION TO EXCLUDE TESTIMONY OF STEVEN HENNING**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ........................................................................................................................................ 1

    A.    Admissibility of Expert Testimony ........................................................................... 1

        1.    Dr. Henning's Opinions that Rely on Company Documents
            are Admissible ................................................................................................ 2

        2.    Dr. Henning Can Testify about Jaeger's Knowledge of Transactions ........... 5

        3.    Dr. Henning is Qualified to Testify About Jaeger's Responsibilities in His
            Position at Enterasys ..................................................................................... 6

        4.    Dr. Henning's Testimony About Materiality Must Be Allowed .................... 7

CONCLUSION .................................................................................................................................... 8

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir. 1985) .......................... 8

*Bogosian v. Mercedes-Benz of N. America*, 104 F.3d 472 (1st Cir. 1996) ................................ 3, 4

*Crowe v. Marchand*, 506 F.3d 13 (1st Cir. 2007) ........................................................................ 1, 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ......................................... 1, 4

*First Marblehead Corp. v. House*, 541 F.3d 36 (1st Cir. 2009) ........................................... 3, 4, 5, 7

*Lauzon v. Senco Products, Inc.*, 270 F.3d 681 (8th Cir. 2001) ........................................................ 1

*Nardi v. Pepe*, 2011 U.S. App. LEXIS 23330 (1st Cir. 2011) .......................................................... 2

*Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77 (1st Cir. 1998) .................................. 4

*SEC v. Delphi Corp.*, 2008 U.S. Dist. LEXIS 78671 (E.D. Mich. 2008) ......................................... 7

*SEC v. DiBella*, 587 F.3d 553 (2d Cir. 2009) .............................................................................. 7, 8

*SEC v. Jorissen*, 470 F. Supp. 2d 764 (E.D. Mich. 2007) ............................................................... 7

*SEC v. Lipson*, 46 F. Supp. 2d 758 (D. Ill. 1999) ........................................................................... 5

*SEC v. McNulty*, 137 F.3d 732 (2d Cir. 1998) ................................................................................ 7

*United States v. Brien*, 59 F.3d 274 (1st Cir. 1995) ....................................................................... 4

*United States v. Morales*, 108 F. 3d 1031, 1039 (9th Cir. 1997) .................................................... 5

*United States v. Ogando*, 547 F.3d 102 (2d Cir. 2008) .................................................................. 7

*United States v. Shay*, 57 F.3d 126 (1st Cir. 1995) ........................................................................ 4

*United States v. Vargas*, 471 F.3d 255 (1st Cir. 2006) .................................................................. 4

### FEDERAL STATUTES

15 U.S.C. §78j ................................................................................................................................... 7

15 U.S.C. §78m(b)(5) ........................................................................................................................ 7

15 U.S.C. §78t..........................................................................................................................7

17 C.F.R. 240-10b-5(a) and (c)................................................................................................7

The United States Securities and Exchange Commission ("SEC") submits the following Response Brief to Eric Jaeger's ("Jaeger") Motion to Exclude Testimony of Dr. Steven Henning ("Dr. Henning).

## ARGUMENT

Jaeger moves to exclude testimony of Dr. Henning on the grounds that he: (1) merely recites facts otherwise in the record; (2) draws inferences about Jaeger's knowledge and subjective state of mind; (3) makes conclusions about Jaeger's role at Enterasys; and (4) offers irrelevant legal conclusions that the entirety of Enterasys's restatements—not the particular transactions for which the SEC seeks to hold Jaeger responsible—are material.[1]  As described below, Dr. Henning's testimony should be allowed in its entirety.

### A. Admissibility of Expert Testimony

Federal Rules of Evidence 702 sets forth the requirements for admission of expert testimony.  An expert must be "qualified by knowledge, skill, experience, training, or education," and must possess specialized knowledge that "will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702; *Crowe v. Marchand*, 506 F.3d 13, 17 (1st Cir. 2007).  The district court has an obligation, as gatekeeper, to insure that the testimony rests on sufficiently trustworthy foundation.  *Id.; Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  However, the rejection of expert testimony is the exception rather than the rule.  *Lauzon v. Senco Products, Inc.*, 270 F. 3d 681, 686 (8th Cir. 2001); Comments to Fed. R. Evid 702, 2000 Amendments.  Dr. Henning possesses specialized knowledge, skill, experience and training on the application of generally accepted accounting principles (GAAP).  His testimony will assist the trier of fact in understanding the application of

---

[1] Dr. Henning's Report is attached to Jaeger's Motion as Exhibit A.

1

GAAP to the transactions at issue in this case and how these transactions fit into the larger restatement of revenue filed by Enterasys after the fraudulent transactions were discovered.

1. **Dr. Henning's Opinions that Rely on Company Documents are Admissible**.

Jaeger objects that Dr. Henning is not allowed to give a summary of the evidence upon which he relied in reaching his opinions. Describing Dr. Henning's report as merely a summary of the evidence is not a correct. Rather, Dr. Henning describes documents of Enterasys related to the transactions which he is analyzing and opines that Enterasys materially misstated its revenue and earnings per share in the Form 10-K filed on March 3, 2001, and in Forms 10-Q filed in the first three quarters of fiscal year 2001 and the first three quarters within the ten-month transition period ended December 29, 2001.

In reaching the opinions in his report, Dr. Henning reviewed tens of thousands of records from the Company.[2] He initially gives the accounting rules established for internal controls, as set forth in the Committee of Sponsoring Organizations of the Treadway Commission Report, *Internal Control—Integrated Framework* (1992) ("COSO Report"). Dr. Henning then ties the documents of Enterasys into the provisions of the COSO Report. This testimony will assist the trier of fact in understanding the internal control framework and how Enterasys failed to comply with these rules.

Fed. R.Evid. 703 permits an expert to rely on facts or data made known to him before the hearing. Rule 703 provides:

> If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

*Id.; Nardi v. Pepe*, 2011 U.S. App. LEXIS 23330 (1st Cir. 2011) ("there is a long tradition of allowing experts to rely on hearsay where it is common practice in the profession to rely upon

---

[2] Contrary to what Jaeger says, these documents are not part of the record, there has been no trial yet.

2

such evidence."); *Crowe*, 506 F.3d at 17 (Federal Rule of Evidence 703 specifically allows experts to rely on materials compiled by others).  The Rule provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. . .

*Id*.  Dr. Henning's review of company records is typical of what experts are permitted to do.  *Id.*

In the alternative, if Jaeger's objection falls under Fed. R. Evid 702, Dr. Henning can testify about the documents he considered to reach his opinions to establish both the methodology and basis for his opinions.  Fed. R. Evid. 702 requires that, first, the court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education," next the court must decide if the subject matter of the expert opinion properly concerns "scientific, technical or other specialized knowledge," and finally, the court performs a gatekeeping function to ascertain whether the testimony is helpful to the trier of fact.  *First Marblehead Corp. v. House*, 541 F. 3d 36 at 14 (1st Cir. 2009); *Bogosian v. Mercedes-Benz of N. Am.*, 104 F. 3d 472, 475 (1st Cir. 1996).

First, Dr. Henning's expertise cannot seriously be questioned.  He has a Ph.d, a Master of Business Administration and a Bachelor of Business Administration.  He is a Certified Public Accountant ("CPA").  His experience is broad-based and includes experience in public accounting, private industry, academia and a year working as an Academic Fellow at the SEC.  Since 2004 he has been a partner with Marks Paneth & Shron LLP, a public accounting and business consulting firm where he practices public accounting and business consulting and is an expert in litigation matters that address allegations of improper financial reporting.  He assists domestic and foreign companies with financial and regulatory reporting matters, including compliance with internal control requirements and conducts investigations related to suspected

management and employee fraud.  Prior to working at Marks Paneth and Shron, he was a Professor at Southern Methodist University and the University of Colorado.  He served as an Academic Fellow at the SEC from 2001 to 2002.   He also worked at Ernst & Whinney [now known at Ernst and Young] as an Audit Manager from 1983 to 1987.  Dr. Henning is qualified as an expert.  *United States v. Vargas*, 471 F. 3d 255, 262 (1st Cir. 2006)( "It is not required that experts be 'blue-ribbon practitioners' with optimal qualifications).

Second, Dr. Henning's expert opinion is relevant because it will assist the trier of fact in deciding complex accounting issues. *First Marblehead*, 541 F.3d at 41, *citing Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 597 (1993); *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.,* 161 F. 3d 77, 81 (1st Cir. 1998) (Exclusion of expert evidence under Daubert was error, new trial ordered).  In addition, internal controls, as outlined by the COSA Report, are not ordinarily within the knowledge of the jury and are, therefore, appropriate for expert testimony.  *See United States v. Shay*, 57 F. 3d 126, 132-33 (1st Cir. 1995) ("The fundamental question that a court must answer in determining whether a proposed expert's testimony will assist the trier of fact is 'whether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved.'").  Dr. Henning's testimony will also provide a necessary framework of otherwise unfamiliar concepts.   Testimony that provides a necessary context and framework, especially in cases involving complex or unfamiliar concepts, can be appropriate for expert testimony without improperly interfering with the jury's assessment of credibility.  *First Marblehead Corp.*, 541 F.3d at 42, *citing United States v. Brien*, 59 F. 3d 274, 276-77 (1st Cir. 1995).  As such, his testimony is reliable and relevant to the facts of the case. *Bogosian*, 104 F. 3d at 475.

**2. Dr. Henning Can Testify about Jaeger's Knowledge of Transactions.**

Jaeger claims that Dr. Henning's testimony about Jaeger's knowledge and state of mind should be excluded. This mischaracterizes Dr. Henning's report, and ultimately his opinions. Dr. Henning, as an accountant and CPA, knows the requirements under GAAP for recognizing revenue. Dr. Henning can testify that Jaeger was given these rules in 1999, he can testify to the statements in emails from Jaeger and also, relying on Jaeger's admissions in investigative testimony, Dr. Henning can testify that someone with this knowledge must have known the elements for revenue recognition. *See First Marblehead Corp.*, 541 F.3d at 41 ([Expert] testified that based on [Plaintiff's] financial circumstances in early 1998 and the uncertainty surrounding First Marblehead's financial future, it would not have made financial sense for someone in House's position to exercise the options.). In *United States v. Morales*, 108 F. 3d 1031, 1039 (9th Cir. 1997), the court allowed an expert to testify that Defendant had a poor understanding of bookkeeping skills. The court held that this testimony did not go to the ultimate issue and should have been allowed under Fed. R. Evid. 702 because: 1) the issue was beyond the common knowledge of the jury, and 2) the witness had expertise in the area. *Id.* Moreover, Jaeger will have the opportunity to cross-examine Dr. Henning. *Hartley v. Dillard's Inc.*, 310 F.3d 1054, 1060 (8th Cir. 2002) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility.)

Jaeger cites *SEC v. Lipson*, 46 F. Supp. 2d 758 (D. Ill. 1999), for the proposition that the "SEC was already admonished by the court that experts like Dr. Henning are not qualified to opine on what defendant knows." Brief at 8. But this is not what happened in *Lipson*, rather the case actually supports the SEC's use of Dr. Henning. In *Lipson*, the SEC moved to strike the defendant's expert, Mr. Perk, because solely on defendants' testimony, Mr. Perk concluded that

the internal financial controls were not reliable. This testimony, which did nothing more that bolster the credibility of the defendants, was disallowed. The court stated that if Mr. Perk had been called to testify about accounting principles, pooling, variable contribution and the significance of a material weakness in internal controls, there would have been no credible attack on his expertise. This is precisely what Dr. Henning will testify about. He has reviewed the documents, will testify about the transactions and how Jaeger's conduct, as demonstrated by the documents, failed to follow certain internal controls. Jaeger certainly has the opportunity to cross-examine Dr. Henning. Again, Jaeger can always cross-examine Dr. Henning. *Hartley v. Dillard's Inc.*, at 1060.

Dr. Henning can also summarize the transactions because a jury cannot easily understand the structure of these transactions to determine how GAAP is applied to them. Dr. Henning then opines on the internal controls at Enterasys that lead to booking the revenue of Centricity, iPolicy and Everest Broadband. This is admissible testimony, Dr. Henning has expertise in this area, relies on documents from Enterasys and GAAP is not easily understood by a jury.

3. **Dr. Henning is Qualified to Testify About Jaeger's Responsibilities in His Position at Enterasys.**

Jaeger claims that Dr. Henning will testify about Jaeger's role at Enterasys, but this mischaracterizes Dr. Henning's report and testimony. Dr. Henning's report and his testimony will address how GAAP applied to the transactions at issue in this case, and a public corporation's obligation to enact internal controls, and to assure the creation of financial statements that comply with GAAP. He will then address the documentary evidence that shows that Enterasys did not adequately formalize and follow internal control procedures. None of this is well within the common sense of jurors, in fact, it requires an expert to explain them. Dr. Henning's testimony will assist the jurors to understand the evidence to determine issues of fact

6

in the case. Again, Jaeger has the opportunity to cross-examine Dr. Henning. *First Marblehead Corp.* at 14, *Hartley v. Dillard's Inc.* at 1060.

### 4. Dr. Henning's Testimony About Materiality Must Be Allowed.

Jaeger claims that Dr. Henning's testimony on materiality is irrelevant, but Jaeger is wrong. Jaeger is charged with violating Section 20 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78t], by aiding and abetting Enterasys's violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and 10b-5(c), thereunder, [15 U.S.C. §78j(b) and 17 C.F.R. § 240.10b-5(a) and (c)].[3] A review of the provisions Jaeger is charged with helps highlight why Dr. Henning's testimony is relevant and should be admitted.

To prove that Jaeger violated the aiding and abetting provisions of the Exchange Act, the SEC must show: (1) the existence of a securities law violation by the primary party; (2) "knowledge" of this violation on the part of the aider and abettor; and (3) "substantial assistance" by the aider and abettor in the achievement of the primary violation. *SEC v. DiBella*, 587 F. 3d 553, 566 (2d Cir. 2009). "Liability for aiding and abetting can be established by showing that the defendant joined the specific venture and shared in it, and that his efforts contributed to its success, or, in other words, by showing that the defendant consciously assisted the commission of the specific crime in some active way." *Id.*, *citing United States v.* Ogando, 547 F. 3d 102, 107 (2d Cir. 2008).

The defendant must have knowledge of the wrong in the primary violation. *SEC v. Delphi Corp.*, 2008 U.S. Dist. LEXIS 78671, at *15 (E.D. Mich. 2008). "Substantial assistance"

---

[3] Jaeger is also charged with violating Section 13(b)(5) and Rule 13b2-1, [15 U.S.C. §78m(b)(5) and 17 C.F.R. § 240.13b2-1]. Section 13(b)(5) and Rule 13b2-1, provide that: "[n]o person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account." The overarching purpose of the Rule and of the Exchange Act generally, is to force publicly traded companies to maintain accurate records. *SEC v. Jorissen*, 470 F. Supp. 2d 764, 770 (E.D. Mich. 2007). There is no scienter requirement for these sections. *SEC v. McNulty*, 137 F.3d 732, 741 (2d Cir. 1998).

requires a showing that the aider and abettor proximately caused the harm to the victim on which the primary liability is predicated. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985).

There is no "materiality" element for the aiding and abetting claim against Jaeger. *DiBella*, 587 F.3d at 566. The SEC need only show that Jaeger had knowledge of the primary violation, and substantially assisted the primary violation. Dr. Henning is qualified to testify that the GAAP misstatements in the SEC filings identified in the Amended Complaint were material, thereby causing Enterasys to misstate its financial records, a primary violation of the Exchange Act. Jaeger is incorrect in claiming that the SEC must prove materiality for his aiding and abetting claim.

## CONCLUSION

For the foregoing reasons, Dr. Henning's opinions should be allowed.


Dated: December 9, 2011

s/Nancy J. Gegenheimer
Leslie J. Hughes (Colo. 15043)
Nancy Gegenheimer (Colo. 8981)
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO  80202
(303) 844-1000

CERTIFICATE OF SERVICE

       I certify that on December 9, 2011, I sent a true copy of the foregoing pleading by electronically mailing it through the ECF system to the following persons:

John Richard Baraniak, Jr.    jbaraniak@choate.com   (Counsel for Patel)

Diana K. Lloyd    dlloyd@choate.com  (Counsel for Patel)

Peter Bryan Moores    pmoores@choate.com  (Counsel for Patel)

Jeffrey B. Rudman    jeffrey.rudman@wilmerhale.com  (Counsel for Jaeger)

Jonathan A. Shapiro    jonathan.shapiro@wilmerhale.com  (Counsel for Jaeger)

Miranda Hooker    miranda.hooker@wilmerhale.com  (Counsel for Jaeger)

Peter A. Spaeth    peter.spaeth@wilmerhale.com  (Counsel for Jaeger)

Bruce A. Singal    bsingal@dbslawfirm.com  (Counsel for Kay)

John C. Kissinger    jkissinger@nkms.com  (Counsel for Kay)

Michelle R. Peirce    mpeirce@dbslawfirm.com  (Counsel for Kay)

Victor W. Dahar    vdaharpa@worldnet.att.net  (Counsel for Skubisz)

Ann Pauly    apauly@gtmllp.com  (Counsel for Skubisz)

Mark B. Dubnoff    mdubnoff@eapdlaw.com    (Counsel for Barber)

Richard McCarthy    rmccarthy@eapdlaw.com    (Counsel for Barber)

Mark B. Dubnoff    mdubnoff@eapdlaw.com  (Counsel for Barber)

Michael D. Ramsdell    mramsdell@krhlaw.com  (Counsel for Barber)

Andrew Good    agood@goodcormier.com   (Counsel for Shanahan)

Philip G. Cormier    pcormier@goodcormier.com  (Counsel for Shanahan)

Steven M. Gordon    sgordon@shaheengordon.com   (Counsel for Kirkpatrick)

Lucy J. Karl    lkarl@shaheengordon.com  (Counsel for Kirkpatrick)

Jeffrey S. Lyons     lyonsj@sec.gov  (Counsel for SEC)

Leslie J. Hughes   hugheslj@sec.gov (Counsel for SEC)

Jay Scoggins       scogginsj@sec.gov (Counsel for SEC)

Kevin E. Sharkey     kjs5@verizon.net (Counsel for Collins)

Jennifer M. Ryan   jryan@dwyercollora.com (Counsel for Collins)

Maria R. Durant   mdurant@dwyercollora.com (Counsel for Collins)

William H. Kettlewell    wkettlewell@dwyercollora.com (Counsel for Collins)

William Contolo   wcintolo@aol.com (Counsel for Boey)

                                                      s/ Nancy J. Gegenheimer