IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>  v.<br><br>ERIC JAEGER and<br>JERRY A. SHANAHAN,<br><br>          Defendants. | No. 01:07-00039-SM<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT ERIC JAEGER'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN LIGHT OF NEW AUTHORITY**

  Pursuant to Local Rule 7.2, Defendant Eric Jaeger submits this Separate Statement of Undisputed Facts in Support of his Motion for Summary Judgment, filed herewith.

  1. The SEC's aiding and abetting allegations against Mr. Jaeger involve "scheme(s) to recognize revenue from transactions that did not generate recognizable revenue, thereby misstating revenue amounts on corporate financial statements." *See* August 19, 2011 Order (Dkt. 255) at 4.

  2. All claims of primary and secondary liability based on the financial statements themselves have been dismissed against Mr. Jaeger. Sept. 30, 2009 Order at 108-124.

  3. The SEC accused Mr. Jaeger of participating in, negotiating, and structuring three transactions as to which revenue allegedly was improperly recognized. First Amended Complaint ¶ 162 ("Jaeger and Kirkpatrick also knew, or were reckless in not knowing, that Aprisma intended to and did, in fact, recognize revenue for the iPolicy sale during the first

1

quarter of Transition Year 2001, even though the material undisclosed contingencies of which they were aware precluded revenue recognition under GAAP"); ¶ 168 ("To bridge revenue shortfalls for the quarter, Jaeger participated in improperly recognizing approximately $100,000 in revenue from sales to Centricity, Inc. during the first ($93,000) and second ($7,000) quarters of Transition Year 2001, and to improperly recognize revenues of $7,000 during the third quarter of Transition Year 2001. Jaeger negotiated and signed the investment documentation for the Centricity transaction."); ¶ 221 ("At the time of the Everest transaction, Jaeger knew, or was reckless in not knowing, that the reciprocal purchase agreement with Everest lacked economic substance, that neither company needed the other's products or services, and that the transaction was driven by Enterasys's desperate need to recognize additional revenue by quarter end. Given these circumstances, Jaeger also knew, or was reckless in not knowing, that it was improper for Enterasys to recognize revenue for this transaction").

4.  Mr. Jaeger's expert, Douglas Kangos, opined that "none of the individual structures [of the transactions] are inherently fatal to the proper recognition of revenue," and "[n]o aspect of their structure precluded or concealed proper revenue recognition." Lux Affidavit Ex. B ("Kangos Op.") at 6.

5.  The SEC's own expert, Steven Henning, testified that:

> Q.   There is nothing inherent about the structure of these transactions that prevents an appropriate decision being made regarding whether or not revenue can be recognized from them, there's no magic element to them that disguises the transaction?
>
> A.   I agree, yes.

Lux Affidavit Ex. A ("Henning Tr.") at 285:7-14.

| | |
|---|---|
| Dated:  June 25, 2012 | Respectfully submitted, |
| | ERIC JAEGER, |
| | By his attorneys, |
| |   */s/ Jonathan A. Shapiro*<br>Jonathan A. Shapiro<br>Elizabeth H. Skey (admitted *pro hac vice*)<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>950 Page Mill Road<br>Palo Alto, CA  94304<br>(650) 858-6000 |
| | Jeffrey B. Rudman (admitted *pro hac vice*)<br>James W. Prendergast (admitted *pro hac vice*)<br>Peter A. Spaeth (admitted *pro hac vice*)<br>James T. Lux (admitted *pro hac vice*)<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>60 State Street<br>Boston, MA  02109<br>(617) 526-6000 |