UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES SECURITIES         )
AND EXCHANGE COMMISSION          )
                                 )
            Plaintiff,           )
                                 )
     v.                          )   Civ. No. 07-39-SM
                                 )
ERIC JAEGER and                  )
JERRY A. SHANAHAN,               )
                                 )
            Defendants.          )

**JERRY SHANAHAN'S MOTION FOR LEAVE TO FILE SUPPLEMENTARY SUBMISSION IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Jerry Shanahan moves this Court for leave to file a five-page supplementary submission in support of his motion for summary judgment, accompanied by a two-page declaration of a witness, Joe Guth. Copies of the proposed submission and Guth declaration is attached hereto as Exhibit A.

The grounds for leave to file are as follows:

1. In the course of their summary judgment submissions, the parties disputed the meaning of a certain entry in a spreadsheet authored by Joe Guth. The entry is relevant on the issue of whether the amount of the over-stated revenue attributable to the questioned Tech Data Canada transaction was immaterial. After the completion of the briefing cycle, the parties jointly interviewed Mr. Guth

1

and he has signed a declaration which clarifies the meaning of the disputed entry. This supplementary submission clarifies the record pertaining to materiality and, for that reason, is necessary to prevent misunderstanding of the documentary record.

2. Undersigned counsel is authorized to state that Nancy Gegenheimer does not assent to the allowance of this motion for leave to file.

                              Respectfully submitted,

                              Jerry A. Shanahan

                              By his attorneys,

                              <u>/s/ Andrew Good</u>
                              Andrew Good

                              <u>/s/ Philip G. Cormier</u>
                              Philip G. Cormier

                              Good & Cormier
                              83 Atlantic Avenue
                              Boston, MA 02110
                              (617) 523-5933

DATED: July 30, 2012

Case 1:07-cv-00039-SM   Document 304   Filed 07/30/12   Page 3 of 13


## Certificate of Service

I hereby certify that a copy of the foregoing Motion was hereby served, via the ECF system, upon the following:

| | |
|---|---|
| **Nancy Gegenheimer** | gegenheimern@sec.gov |
| **Leslie J. Hughes** | hugheslj@sec.gov |
| **Jeffrey S. Lyons** | lyonsj@sec.gov |
| **Jeffrey B. Rudman** | jeffrey.rudman@wilmerhale.com |
| **James A. Scoggins, II** | scogginsj@sec.gov |
| **Jonathan A. Shapiro** | jonathan.shapiro@wilmerhale.com |

DATED: July 30, 2012

/s/ Andrew Good
Andrew Good

# Exhibit A

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE


UNITED STATES SECURITIES       )
AND EXCHANGE COMMISSION        )
                               )
             Plaintiff,        )
                               )
       v.                      )    Civ. No. 07-39-SM
                               )
ERIC JAEGER and                )
JERRY A. SHANAHAN,             )
                               )
             Defendants.       )
```

**JERRY SHANAHAN'S SUPPLEMENTARY SUBMISSION
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Jerry Shanahan submits this supplementary submission in support of his motion for summary judgment.

The grounds for this submission are as follows:

1. In addition to his contention that the uncontradicted evidence shows that the Tech Data Canada transaction did not involve a "side letter scheme" at all, Mr. Shanahan has argued that the dollar amount of the alleged overstatement attributable to the August transaction with Tech Data Canada was mathematically immaterial. Specifically, Mr. Shanahan has argued that the $2.863 million of revenue recognized from the questioned transaction was immaterial because it

1

amounted to 1.2% of the $240,818,000 total revenue reported for the quarter ended September 1, 2011. Doc. 280 at 19-20. This 1.2% figure does not take the $1 million reserve into account at all. But it is certainly low enough to render the over-reported revenue immaterial, according to the standard this Court applied when dismissing SEC claims against Piyush Patel and Lawrence Collins.

2. However, an important document which provides further support for Mr. Shanahan's mathematical immateriality contention is a spreadsheet authored by Joe Guth that included a $1 million reserve against revenue totaling $3.8 million for two transactions – one in July and one in August of 2001. Doc. 281-10 at 3 (Shanahan Ex. 30). Application of the reserve reduced the revenue amount that was over-reported. Mr. Shanahan has argued that the $1 million reserve applied to the August transaction which the SEC alleges involved a side letter scheme. See Doc. 280 at 8 n.3.

3. The SEC's submission argued that the $1 million reserve applied exclusively to the July 2001 transaction and did not apply at all to the August 2001 transaction at issue.

2

> Shanahan points out that Guth's spreadsheet took a $1 million reserve for total sales to Tech Data Canada of $3.8 million. Shanahan does not argue that the $1 million in reserves against revenue was for the August 29, 2001 sale to Tech Data Canada, and it was not. <u>The $1 million in reserve was for the $1 million sale to Tech Data Canada in July 2001.</u> Kay agreed to the return provisions in the first transaction with Tech Data Canada and said they could reserve against the revenue if necessary. (SEC Ex. 25).

SEC Reply In Support of SEC's Summary Judgment and Response to Shanahan's Summary Judgment (doc.228)(1/20/12) at 7 (emphasis added) (footnotes omitted).  In his reply memorandum, Mr. Shanahan maintained that the $1 million reserve was entered in the spreadsheet in a column that refers to end-of-quarter deals so that the reserve applied to the August transaction.  Doc. 297 at 15 n.4.

4.   After this cycle of summary judgment submissions was completed, counsel for both parties interviewed the spreadsheet's author, Joe Guth.  As a result of the Guth interview, Mr. Guth executed a Supplemental Declaration dated April 24, 2012, a copy of which is appended here to as Exhibit 1. Mr. Guth's Supplemental Declaration conclusively rejects the SEC's argument that the $1 million reserve applies entirely and exclusively to the July transaction. In pertinent part, Mr. Guth states:

3

> When I wrote the $1 million reserve on the Tech Data Canada line, that reserve did not apply exclusively to $1 million transaction in July 2001. I did not recommend a 100% reserve for the July transaction and 0% reserve for the August transaction. As far as I know and remember, the $1 million reserve entry applied to both the July and the August transactions which totaled $3,863,000, so that the reserve entry constituted approximately 25% of that total.

Supplemental Declaration of Joe Guth at 2 ¶5.

5.   Mr. Guth's Supplemental Declaration conclusively resolves the parties' dispute about the applicability of the $1 million reserve to the August 2001 Tech Data Canada transaction. In accordance with Mr. Guth's declaration, the $1 million reserve applied to both the July and August transactions. The $2.683 million August transaction constituted 74% of the total for both transactions of $3.683 million. Hence, the reserve applicable to the $2.683 million August transaction was $740,000 so that the net amount of over-reported revenue was $2,123,000, which amounts to only .9% of the $240 million in revenue reported for the quarter. Thus, the percentage of over-reported revenue was actually less than the 1.2% argued previously by Mr. Shanahan. This is somewhat stronger evidence that even-handed application of the materiality standard applied to the SEC's claims against Piyush Patel and

4

Larry Collins should afford summary judgment against the SEC.

Respectfully submitted,

Jerry A. Shanahan

By his attorneys,

/s/ Andrew Good
Andrew Good

/s/ Philip G. Cormier
Philip G. Cormier

Good & Cormier
83 Atlantic Avenue
Boston, MA 02110
(617) 523-5933

DATED: July 30, 2012

Certificate of Service

I hereby certify that a copy of the foregoing Motion was hereby served, via the ECF system, upon the following:

| | |
|---|---|
| **Nancy Gegenheimer** | gegenheimern@sec.gov |
| **Leslie J. Hughes** | hugheslj@sec.gov |
| **Jeffrey S. Lyons** | lyonsj@sec.gov |
| **Jeffrey B. Rudman** | jeffrey.rudman@wilmerhale.com |
| **James A. Scoggins, II** | scogginsj@sec.gov |
| **Jonathan A. Shapiro** | jonathan.shapiro@wilmerhale.com |

DATED: July 30, 2012

/s/ Andrew Good
Andrew Good

# Exhibit 1

### SUPPLEMENTAL DECLARATION OF JOE GUTH

I, Joe Guth, hereby declare under penalty of perjury that the following is true:

1. I am the same Joe Guth who signed a declaration dated February 8, 2012.

2. I drafted the spreadsheet entitled, "Enterasys Networks, North American Channels, Q3 FY02, Return Reserves Recommendation. I wrote it on or around September 5, 2001. That spreadsheet is mentioned in paragraphs 2 and 3 of my February 8, 2012 declaration, and is attached hereto as Exhibit A. This spreadsheet included entries on the Tech Data Canada line of sales.

3. My practice was to make an estimate of possible returns by the Channel Partner. The spreadsheet's line for Tech Data Canada included a $1 million reserve to account for the estimated returns.

4. My practice then was to send my draft spreadsheet to Bruce Kay, Enterasys's Chief Financial Officer and person in charge of Channel Partners, and others in the accounting department. They would sometimes change my estimates and reserves. The first spreadsheet I sent showed total reserves of $32 million. Then Kay and others made comments and the reserve was changed to $25 million. (see Shanahan Ex. 30; Exhibit B attached hereto). One can look at the revised spreadsheet and see that a number of the items changed in my spreadsheet. None of the revised items related to Tech Data Canada. This revised spreadsheet is what

went to KPMG. See Ex. C attached hereto. The Tech Data Canada line was the same on all three versions of the spreadsheet.

5. When I wrote the $1 million reserve on Tech Data Canada line, that reserve did not apply exclusively to $1 million transaction in July 2001. I did not recommend a 100% reserve for the July transaction and 0% reserve for the August transaction. As far as I know and remember, the $1 million reserve entry applied to both the July and the August transactions which totaled $3,863,000, so that the reserve entry constituted approximately 25% of that total.

6. The $7 million reduction in reserves mentioned in paragraph 4 of my February 8, 2012 declaration did not apply to, or reduce, the $1 million reserve for the Tech Data Canada transactions.

Date: _____  _Joe Guth  4/24/12_
                                          Joe Guth

2