# Exhibit 4



| | Accton Technology Corporation |
|---|---|
| **Client** Enterasys Networks | **Year-end** 12/29/01 |
| **Prepared by** Keith Geneva | **Date** 9/02 | **W/P reference** F-31-1 |

*Purpose/Background/Procedures*
For a description of the purpose, background, and procedures used to select the significant customers see memorandum "Significant Customer Analysis"; at work paper <F-30>.

*Results:*
Based on our reviews of the contracts, confirms and supporting documentation we documented our understanding of the customer relationship and the results of our testwork below.

*Customer Relationship*
Accton Technology Corporation is typically used as an Enterasys Vendor. There are specific situations where Accton purchases Enterasys product for internal use. KPMG noted that all the contracts between Enterasys and Accton related to the vendor relationship. Due to the lack of a standard contract, all purchases made by Accton for Enterasys products would be governed by the related purchase orders.

*Specific Order Selection*
KPMG noted, through review of the RAGE tables, that Accton had one significant purchase during the fiscal year ended 12/29/01.

<u>Purchase Order #C10600002</u>
    Date  5/04/01
    $500,000

The order related entirely to Aprisma Spectrum software. In review of the purchase order KPMG became aware of two versions. One PO was made out to Aprisma while the other was to Enterasys. KPMG clarified through a confirmation, see confirmation section below, that the initial transaction was with Aprisma. Based on review of the supporting documentation it appears reasonable that the company processed the sale through intercompany transactions. Enterasys US purchased the software from Aprisma, the product was then transferred/sold to Enterasys EMEA (Ireland) via intercompany account (noted that Enterasys IRE. took no net revenue), and finally Enterasys IRE. sold the product through to Accton.

During Q1TY01 the company shipped the $500K of software to Accton on 6/2/2001. The $500K of A/R remained open through 10/23/01. Per review of email correspondence Accton was unwilling to pay for the software provided. It appears unclear as to whether Accton ever really wanted the software or if there was an agreement to have them hold the inventory on a consignment type basis. In order to facilitate the payment of the A/R, Enterasys entered into an agreement during Q2TY01 to have Accton provide $500K of Non-recurring Engineering (NRE) services.

On 8/31/01 Enterasys received an invoice from Accton for $500k worth of NRE charges. KPMG noted that there was no specific documentation to what services were provided. Upon review of

These Documents Are The Property of KPMG LLP And Are Provided To The SEC For The Sole Use Of The SEC And Its Staff In Its Investigative and Administrative Capacity. KPMG LLP Requests That These Documents Be Accorded Confidential Treatment Pursuant to 17 CFR Section 200.83.

KPMG 37457

 Accton Technology Corporation

the available documentation and discussions with Enterasys it appears as if these services which were invoiced were never provided.

KPMG reviewed email correspondence between the companies surrounding the collection of both receivables. It appears that the final verbal agreement indicated that Enterasys would pay the $500k invoice for NRE charge (note it appears they were never provided) and Accton would subsequently remit their payment of $500K for the Spectrum inventory. ETS Ireland paid the $500K invoice via check on 10/15/01 which subsequently allowed Accton to remit the cash back to ETS on 10/23/01. Enterasys was unable to substantiate the value of the services provided by Accton and it appears reasonable that the earnings process for this transaction was never completed. Additionally it appears that Enterasys never received the NRE services invoiced from Accton. KPMG notes that ETS Ireland made an adjustment to reverse the NRE expense as of 12/29/01, as noted @ <F-31-4c>. Therefore, KPMG proposes an adjustment to reverse the revenue that was recorded for the software sale. See "**Adjusting Entries**" below for the adjustment needed to reverse the revenue.

KPMG noticed an unusual $500K Dr. COGS entry in ETS Ireland entered during the second quarter. Through discussions with Larry Collins and review of the entries ETS Ireland made in their MINX system it appears reasonable that the entry was reversed in the same period, no net effect on the financials. David Dugan, ETS Ireland, entered the entry in an effort to accrue for Non-recurring Engineering charges expected from Accton in Q2TY01. This entry was reversed on 9/2/01, the same quarter, when he was not provided with the appropriate support that the work was done.

*Confirms*
*A/R Confirmation/Subsequent Cash*
N/A

*US Revenue Confirmation* ⟨F-31-1D⟩
KPMG received the Accton confirmation back on May 10, 2002, without any exceptions. Accton agreed with the existence and accuracy of the attached purchase order #C106000002 (summarized above). Additionally they agreed with management's representation that there were no side agreements or modifications to the existing contracts that would alter the terms of the purchases made throughout the year. Accton clarified that the purchase order sent to Aprisma was the original and governed the purchase. KPMG noted that other then the shipping terms the purchase orders were the same. Through the SAB 101 testwork it was determined that the shipment was sent FOB destination. As discussed above KPMG is proposing to reverse the entire order. See "**Adjusting Entries**" section below for the entries needed to reverse the transaction.

*SAB 101 Testwork/Subsequent Cash*
KPMG selected one invoice related to Accton. This invoice related to PO C10600002 that was noted on the confirmation above. KPMG noted that the revenue associated with invoice #9001187112 related to software sales. KPMG determined that the order was shipped with FOB Destination terms. As the product was not delivered until 6/7/01 the revenue would need to be deferred until Q2. As discussed above KPMG is proposing to reverse the entire order.

Page 2 of 3                                                                                         10/4/2002

These Documents Are The Property of KPMG LLP And Are Provided To The SEC For The Sole Use Of The SEC And Its Staff In Its Investigative and Administrative Capacity. KPMG LLP Requests That These Documents Be Accorded Confidential Treatment Pursuant to 17 CFR Section 200.83.

KPMG 37458



Accton Technology Corporation

KPMG reviewed the subsequent cash payments for the SAB 101 selection noting that it was cleared within SAP. Enterasys received payment from Accton through a wire for this invoice on 10/23/2001. KPMG reviewed the payment and noted that it appears reasonable.

**Installation**
N/A

**Software**
All the software revenue from PO#C10600002 is being reversed as noted above.

**Investment**
N/A

**Aprisma Reseller**
KPMG Aprisma audit team performed a review of the accounting of transactions for customers that were reselling significant amounts of Aprisma products. See the specific testwork performed in the Aprisma work papers.

**FAS 48**
N/A

**POS**
N/A

**Other**
N/A

**Adjusting Entries**

KPMG notes that the Company made an adjusting entry to reverse the revenue associated with the Accton transaction. No entries were made to reverse intercompany transactions, as these would eliminate in consolidation. The entry booked as of 12/29/01 by ETS US is as follows.

<u>Reversal of ETS Revenue Entry</u>
*Q1TY01*
Dr. Revenue  $500,000
    Cr. I/C(ETS Ireland)  $500,000

**Conclusion:**
Based on the testwork performed and adjusting entries it appears reasonable that the Accton transactions were recorded appropriately.

*Note: After adjustment, there was no revenue recognized from transactions with Accton during TY01.*

Page 3 of 3                                                                 10/4/2002

These Documents Are The Property of KPMG LLP And Are Provided To The SEC For The Sole Use Of The SEC And Its Staff In Its Investigative and Administrative Capacity. KPMG LLP Requests That These Documents Be Accorded Confidential Treatment Pursuant to 17 CFR Section 200.83.

KPMG 37459